GEORGE W. CHACE & others *v.* ABBY A. CHACE & others.

The statute claim of a child, born after the execution of his father's or mother's will, for whom no provision is made therein, to the same right and interest in the estate of his father or mother, as if the father or mother had died intestate, cannot be resisted by proof, that the omission to provide for him was intentional; and hence, on the trial of an action of ejectment, in which the plaintiffs claimed against the will of the parent in right of the after-born child, parol evidence to this effect was held inadmissible.

TRESPASS and ejectment, to recover six undivided eighth parts of a farm in Portsmouth, of which Samuel W. Chace, late of said Portsmouth, died seised.

The case was tried at the February term of this court for the county of Newport, 1859, before the chief justice, with a jury, when it appeared, that Samuel W. Chace, being seised of a farm in Portsmouth, which he had inherited from his father, Abner Chace, on the 8th day of September, 1856, duly executed his last will and testament, and thereby devised and bequeathed all his estate, real, personal, and mixed, to which he was entitled, or should be entitled at the time of his decease, to his wife, Abby A. Chace, one of the defendants; that the said Samuel, afterwards, on the 10th day of October, had born to him by the said Abby A. a daughter, who was named Clara Matilda Chace; and afterwards, on the 18th day of January, 1857, died, leaving his said minor daughter and his said wife to survive him; that the said will of the said Samuel was, on the 18th day of February, duly proved before the court of probate for the town of Portsmouth, and that the said Clara Matilda Chace afterwards, on the 10th day of April, 1857, died.

The plaintiffs represented six of the eight brothers and sisters of Samuel W. Chace, and claimed their portions of the farm in question as the heirs or next of kin of the said Clara Matilda

Chace, of the blood of her father, Samuel W. Chace. The defendant, Abby A. Chace claimed the farm under the will of her husband, the other defendant holding under her.

At the close of the case of the plaintiffs, the defendants offered to prove by parol testimony, that the said Samuel W. Chace, at the time of making his will, knew that his wife was big with child, and that it was his intention, notwithstanding, to give his estate entirely to her, leaving her to provide for the child; and that after the birth of the child he expressed the same intention in expectation of death. The presiding judge ruled out this testimony upon the objection of the plaintiffs; whereupon the jury having returned a verdict in favor of the plaintiffs, the defendants now moved for a new trial, upon the ground that said ruling was erroneous in matter of law.

*Bradley* and *Sheffield*, for the defendants.

1st. When the law implies the revocation of a will, from facts *dehors* the will, as from a subsequent marriage and birth of a child, such revocation may be avoided by parol evidence of a contrary intent in the mind of the testator. 1 Jarman on Wills, 150; 4 Kent's Com. 523; *Wheeler* v. *Wheeler*, 1 R. I. Rep. 364, 372.

2d. The act respecting wills should be taken as a whole, and its parts should be so construed as to give effect to its main purpose : the grant of testamentary power. Hence, of the two constructions of the clause in question, (Dig. 1844, p. 232, § 6 ; Rev. Stats. ch. 154, § 10,) that which considers it as a provision for cases of accident only, has prevailed with the courts; so that the will, when shown to be in accordance with the real intention of the testator, is allowed to stand; and this intention may be shown by evidence · *aliunde* the will.

Upon a similar statute, the Massachusetts courts have held to the construction claimed by the defendants. *Ferry* v. *Foster*, 1 Mass. 146; Sewall J. *Church* v. *Crocker*, 3 Mass. 17; Parsons, C. J. *Wilder* v. *Goss*, 14 Mass. 357. The Revised Statutes, and the later cases in Massachusetts, confirm this view. *Wilson* v. *Fosket*, 6 Met.' 400; *Bancroft* v. *Ives*, 3 Gray, 367. See, also, *Havens* v. *Vandenburgh*, 1 Denio, 27.

3d. Suppose the will had expressly declared the testator's knowledge of *the coming event*, and his intention to make just such a will as he had in view of it, would this clause of the statute overrule its other provisions, and the intent of the testator thus made known? No court, we think, would so declare. If, then, some fact *dehors* the will is to overthrow the will, should not that fact come before the court with all its modifying facts? If from that fact alone one inference would be drawn, may not other facts be offered to show that this inference would be a false one? *Wheeler* v. *Wheeler*, *supra*, establishes the admissibility of the evidence of acts and circumstances to rebut a statutory revocation of a will in Rhode Island.

4th. The policy of our law has always been to uphold wills, and the testamentary power. It is right that the subordinate sections of our statute of wills should be so construed as to harmonize with, and not to defeat, the main purpose of the act; and no instance can be found in the history of jurisprudence in this state, in which a will has been set aside, except one, and then to uphold an earlier and better will.

*Wm. H. Potter* and *Van Zandt*, for the plaintiffs.

1st. The plaintiffs claim under a statute title; the statute declaring that a child born after the execution of his father's or mother's will, shall, notwithstanding the will, have the same right and interest in the estate as if the father or mother had died intestate. The offer of the defendants is, to prove by parol, that the testator desired his property to go according to *his will*, and not according to *law*. The statute of descents, in case of intestacy, no more passes an estate to the heirs of the person last seised or entitled, than this statute does to the child born after the execution of the will.

2d. It is not the *actual*, but the *legal*, intention of a testator, by which his will is to be construed; and any other disposition of his property according to his intent than that which the law allows, can no more be said to be accordant with its policy, than it would be to sanction a will because of the testator's intent, when not executed in presence of the statute number of attesting witnesses. *Martindale* v. *Warren*, 15 Penn. 471. Upon

the question of title under a will, declarations of the testator *after the making of his will,* of his purposes and intents, are not admissible. *Weston & others* v. *Foster & others,* 7 Met. 299.

3d. Legislation in Rhode Island has always, and by all possible means, secured the transmission of real estate according to the blood. Dig. 1798, pp. 281, 287 ; Dig. 1822, p. 217. These statutes provide for a child born after the death of the father, and make no provision for a child born before, but after the execution of his will. Provision is also made in case of intestacy for posthumous children. Dig. 1798, p. 287. The statute under which this question arises, (Dig. 1844, p. 232,) first provided for children born after the execution of the parent's will who had no provision made for them in it, and was designed to enlarge the *rights* of the testator's children so born, and to make them peremptory against his will.

4th. The cases cited by the defendants from 6 Metcalf, and 3 Gray, have no application to our statute ; the Massachusetts statute, giving the right to the after-born children to take, " *unless* it shall *appear* that such omission was intentional and not by any mistake or accident;" and the present statute is treated by them as a mere adoption by the legislature of the judicial construction of the act of 1783. The Massachusetts construction of their act was well known to our legislators ; and the change made by our act of 1844, indicates that our legislature intended to have, in this respect, a law different from that of Massachusetts. The Massachusetts decisions are wanting, too, in uniformity, and are contradictory. Contrast *Wilder* v. *Goss,* 14 Mass. 357, with *Tucker* v. *Boston,* 18 Pick. 162.

5th. The New Hampshire act, now in force, differs much less from the Massachusetts act than our own. Yet the supreme court of that state held, that the Massachusetts decisions were not applicable to it, nor a decision of their own court, under a former act of New Hampshire. See *Gage* v. *Gage,* 9 Foster, 533.

6th. Our statute makes a clear and uniform rule, and gives voice and expression to a law of nature, that it is to be pre-

sumed that a man intends that his children shall inherit his estate unless he positively disinherits them.   All the analogies of the law support a rigid construction of this statute. Observe how far, in cases of wills and devises, the courts have gone to include after-born children.   *Stedfast* v. *Nicoll*, 3 Johns. Cas. 18 ;   *Swift* v. *Duffield*, 5 S. & R. 38 ;   2 Jarman on Wills, pp. 102, 103, and notes.

7th. The wisdom of our statute could not be more strongly exemplified than by this case, in which, unless the only daughter of the testator inherited under this statute, she would, if she had lived, been absolutely penniless ; while, on the other hand, if the child took, the mother would, notwithstanding, be well provided for under the law.

BRAYTON, J. The statute under which the question now submitted to the court in this case is raised provides, that " when any child shall be born after the execution of his father's or mother's will without having any provision made for him in such will, he shall have a right and interest in the estate of his father or mother in like manner as if his father or mother had died intestate, and the same shall be assigned to him accordingly."   Digest of 1844, p. 232, § 6.

The daughter, Clara Matilda Chace, was born to the testator after the execution of his will, and no provision is made for her in the will of her father ; and the plaintiffs, who are heirs at law of the said Clara Matilda, claim, that by the express and plain provision of the act she became entitled on the death of her father to the same share in his estate, real and personal, as she would have inherited had he died intestate.

Upon the face of this provision of the statute, such must be the necessary result.   Taking this section of the act by itself, there is but one construction to be given to it, viz.: that an after-born child, not provided for in the will, shall inherit in the same manner as if no will had been made ; — that as against him the will shall be inoperative ; — that such child shall not be thus disinherited.   We cannot otherwise give effect to the words of the act.   The statute requires, in order to defeat his claims as heir, not only that some provision should be made for such child, but that such provision should be made in the will of his parent.

It provides, therefore, not only under what circumstances he shall inherit, the will notwithstanding, but how those circumstances shall be made to appear, viz.: by the will itself.

The defendants, who claim under the will to the exclusion of the after-born child, contend, that parol evidence is admissible, nevertheless, to show that the testator intended that the will should operate according to its provisions, and did intend to leave such child unprovided for; and seeks to apply to this case a rule of law not controverted, viz.: that when the law implies a revocation of a will from facts *dehors* the will, that revocation may be avoided by parol evidence of a contrary intent in the mind of the testator.

The argument here assumes, that the statute provisions only make the omission to provide for such child in the will a fact from which to imply an intent in the testator to revoke. In reply to this argument, two suggestions may be made : first, that the will is not revoked by the birth of such child. The act does not provide that it shall be, nor is it in any case entirely defeated in its operation, except where the child so born is sole heir. If there be other children, all the devises take effect, except so far only as to let in such after-born child to his share of the inheritance. The will stands and goes to probate, and it is another question how much estate passes by it. But, secondly, it may be said, that this provision of the act does not profess to frame a rule of evidence, but to declare a rule of law. It provides, that in a certain event, a child not provided for in the will shall inherit notwithstanding the will, and a share of the estate shall be assigned to him. The case of *Marston* v. *Doe* d. *Fox*, 8 A. & E. 14, was a case where the will was claimed to be revoked by the marriage of the testator and birth of a child after the making of the will. In that case, if there was any revocation, the whole will was revoked as to all the objects of the testator's bounty. Parol evidence was offered to show that the testator did not intend that the will should be revoked by the marriage and birth of issue. The opinion of the court was delivered by *Tindal*, C. J., rejecting the evidence ; and upon the ground, that the will was

not revoked from any implied intent to revoke, but that the revocation was the result of a rule of law; and that where it appeared that the will was executed before the marriage and birth of issue, and such issue was left unprovided for, either by the will or otherwise, the will became revoked by a tacit condition annexed to it when executed; that the revocation took place in consequence of such rule of law, independently of any question of intention of the party himself, and therefore, that parol evidence of acts, conduct, or declarations of the testator leading to the inference that he meant the will to stand, was not admissible to rebut the presumption of revocation. There was in fact no presumption of intent to be rebutted. Is an express statute provision less a rule of law, or more a rule of evidence? Is the rule that marriage and birth of a child revokes a will more express than this rule prescribed by the statute?

The cases cited by the defendants from the adjudged cases in Massachusetts, properly considered, do not support the position taken by the defendants. Their statute, passed in 1784, provides, that " any child or children, or their legal representatives in case of their death, not having a legacy given him, her, or them, in the will of their father or mother, shall have a proportion of the estate of their parents assigned to him, her, or them, as though such parent had died intestate; provided," &c. In the cases of *Foster* v. *Terry*, 1 Mass. 146; *Wild* v. *Brewer;* 2 Ib. 570; *Church* v. *Crocker*, 3 Ib. 17; *Wilder* v. *Goss*, 14 Ib. 359, decided under this statute, it was held, that if it appeared from the other parts of the will that the name of the child was not omitted from accident, forgetfulness, or mistake, but by design, the will should, though no legacy were given to the child, be carried into effect, and the child omitted should not inherit, and that such was the intent of the legislature. But in no one of these cases, nor in any case prior to the Revised Statutes of 1836, was it held, that evidence *aliunde* the will could be admitted to show the intent of the testator to exclude the child, and they all assume that it was inadmissible. In *Tucker* v. *Boston*, 18 Pick. 162, the supreme court of Massachusetts, by *Shaw*, C. J. who delivered the opinion of the court, express a strong doubt of the propriety of even those decis-

35 *

ions, as the reasonable and true construction of the statute; but say "whatever we might have thought if now first called upon to expound the statute, the construction has been too long and uniformly adapted and settled as a rule of property, to be safely over-turned." In *Bancroft* v. *Ives*, 3 Gray, 367, the reason for these decisions is intimated, as influenced by the preamble to the act, in substance the same passed in 12 William III. The preamble is there recited, setting forth the then existing evil which the legislature designed to remedy. The preamble was, " Whereas through anguish of the deceased testator, or through his solicitous intention, though in health, or through oversight of the scribe, some of the testator's children are omitted, and not mentioned in the will, many children also being born after the making of the will, though in the lifetime of the testator." With this clear expression of the existing evil, the court might well hold that it was sufficient to let in the heir against the will only in cases where it appeared from the will he was omitted by mistake, accident, or forgetfulness. We have no such light to direct us. Since these decisions, by the Revised Statutes of the state, this act has been altered and amended, and the proviso is added " unless it shall appear that such omission was *intentional,* and not occasioned by any mistake or accident." The case of *Wilson, Executor,* v. *Fosket,* 6 Metc. 400, has been decided upon the added words; and it has been held, that within this language parol evidence, even, may be admitted to show that the testator did not intend to make provision for the child which had been omitted. Parol evidence was admitted, because, as the court say, the party claiming the distributive share did not claim under the will, but under the statute. In effect, the court hold, that the words here prescribed a rule of law ; and if it be made to appear, that the omission was by design, the child should not inherit, depending upon the proof of such design; and as the act did not prescribe any rule of evidence, that question might be determined by any evidence, which by the general principles of evidence would be relevant to such an issue. The statute leaves nothing to implication in the sense claimed by the defendants. It provides, not impliedly, but in express language, that if the omission be by

design, then by a rule of law the heir shall not be let in to inherit.

It is quite evident from a perusal of all these cases, both upon the original statute and as now amended, that were the question now for the first time raised upon the original act, especially had the preamble of the original act been omitted, parol evidence would not have been admitted, nor any evidence, to defeat the child omitted in the will; and that such an offer as was made by defendants in this case at the trial, would have been rejected.

It does not seem to us that the purpose of our statute of wills, much less the *main* purpose of that statute, is, as suggested by counsel, defeated by giving this construction to its sixth section, and excluding parol evidence of the testator's intent. It is true, that all the provisions of this act, all its several sections, should be so construed as to give effect to each, and, so far as may be, to make them all harmonize with the general purpose of the act. The argument assumes that the *main purpose* of the act is, to grant the testamentary power to the parent to devise his estate away from his children, and give it to such others as he will, and that it is not to be presumed that the legislature intended to limit or restrain this power, by confining it to such children as may then be born. Why is this not to be presumed when this is the language of the act? Why should we presume that the legislature did not intend what they so clearly express? The purpose of the act is not to give a parent an unlimited power. It is quite evident that it was designed to lay upon it many restrictions. The proviso of the first section begins with restricting the extent and duration of the estate to be created by the will. By the second section a further condition is imposed upon the power,—that the will of the parent shall only have effect if it be expressed in writing, signed by the testator in the presence of three subscribing witnesses,—notwithstanding the general power to devise to children, or to others, as he shall think fit. The sixth section is but another limitation upon this general power to devise to other than children, declaring that the inheritable share of an after-born child shall not be devised to others, unless some provision shall be made for such child in

the will which devises it away. This cannot be deemed an unreasonable restraint upon the power conferred by the first section. The parent is at liberty, so far as it respects all his children born at the time of executing his will, whose character, disposition, powers, and necessities, and probable wants, and what claims they may have upon him, may be supposed to be known to him, to devise what would otherwise be inherited by them to others; either with a view to their obedience and proper government, or to what he may deem best for them. There is certainly much less reason for allowing a parent to disinherit, and leave utterly unprovided for, a child of whose claims upon his justice, as well as his bounty, whose wants and necessities in life, from the nature of things, can neither be known or foreseen. At any rate, it is not so unreasonable a restriction upon the power of devising, that it should lead us to presume that it was not intended by the language used.

It is urged, in the argument, in favor of the admission of the parol evidence to establish the intent of the testator, that the admission of such evidence will not interfere with the statute of frauds, and that the evidence does not conflict with the will, and is only intended to confirm it. So far as the evidence offered by the defendants goes, it is offered in support of the will. We cannot suppose that a legislative body would allow evidence to be given by one side only upon any question depending upon evidence; and it is not pretended in this case that they did so intend. If they did not, then is the question open to proof, which must necessarily contradict the will, and show that the intent of the maker of the will was not what is expressed in the written language; and because this result would follow, the court, in *Marston* v. *Fox, supra,* excluded the evidence to prove or to disprove such intent. We think the reason assigned entirely satisfactory, and a sufficient answer to the position of the defendants.

Upon the whole, we are of opinion, that by the terms of the sixth section, the legislature intended to, and did, prescribe a rule of law, that if an after-born child is not provided for at all in the will, he shall be let into his share of the inheritance,

and that without regard to the will or intent of the parent; and that therefore, no evidence of such intent is admissible to defeat the child.

The motion for a new trial in this case must be overruled, and judgment entered for the plaintiffs, for possession.